IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHON S. WRIGHT,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTINE E. WORMUTH,<br>Secretary, Department of the United States Army,<br><br>Defendant. | CIVIL NO. 21-00228 JAO-KJM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pro se Plaintiff Jonathon S. Wright ("Plaintiff") brings this action to obtain mileage reimbursement for commuting to Schofield Barracks instead of his office at Fort Shafter, which was unavailable for approximately nine months while undergoing renovations.  Defendant Christine E. Wormuth ("Defendant"), Secretary of the U.S. Army, moves to dismiss Plaintiff's claim, or in the alternative, for summary judgment.  ECF No. 17.  For the following reasons, the Court GRANTS Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

## BACKGROUND

### I.     Factual History

Plaintiff, a civilian employee of the U.S. Army in Hawaiʻi, is an information

technology specialist for the Regional Cyber Center – Pacific Group ("RCC-P"), at

Fort Shafter.  ECF No. 18 (Def.'s Concise Statement of Facts ("Def.'s CSF")) ¶ 1;

ECF No. 1 ("Compl.") at 3 (¶ 1).  Around February 10, 2017, Christopher Siegrist,

director of RCC-P, notified employees via written memorandum ("Siegrist

Memo") that their official duty station would change from Building 520 at Fort

Shafter to Building 1500 at Schofield Barracks ("Schofield") effective February

18, 2017 because of renovations at Fort Shafter.  Def.'s CSF ¶ 2; ECF No. 18-1

(Decl. of Christopher Siegrist ("Siegrist Decl.")) ¶ 4; ECF No. 18-2 (Ex. 1).  The

Siegrist Memo states, in pertinent part:

> 1.     This memorandum is to inform you of a temporary change
> in your duty station from the Regional Cyber Center Pacific
> (RCC-P), Fort Shafter, Hawaii to BLDG 1500 Schofield
> Barracks effective February 18, 2017.
>
> 2.     The RCC-P will undergo major renovations within the
> office and building. As a result, you will be temporarily
> reassigned to BLDG 1500 Schofield Barracks, where you will
> continue to perform the same essential job functions that you
> now perform.  We anticipate the completion in 14 weeks and will
> provide you sufficient notice in returning to Fort Shafter.

ECF No. 18-2 at 2.  Due to delays, the renovations were not completed until

November 10, 2017.  Siegrist Decl. ¶ 4.  During the renovations, RCC-P

2

employees could not work at Fort Shafter, so they reported to Schofield — located 19.1 miles from Fort Shafter — to complete their assigned duties. *Id.* ¶¶ 6–8; Def.'s CSF ¶¶ 3–4, 6. RCC-P employees did not have to travel between Schofield and other work sites to complete their duties.[1] Siegrist Decl. ¶ 8; Def.'s CSF ¶ 5.

On December 5, 2017, Plaintiff submitted travel reimbursement claims for commuting to Schofield. Compl. at 3 (¶ 5). The Army rejected his claims. ECF No. 17-1 at 9.

On April 24, 2020, Plaintiff filed a claim with the U.S. Civil Board of Contract Appeals ("CBCA"). Compl. ¶ 8. The CBCA denied Plaintiff's claim based on the reasoning in (1) *Samuel C. Parhshall*, CBCA 6890-TRAV, 20-1 BCA ¶ 37,693, a Board decision involving the same temporary change of office location, and (2) *Aubart v. McCarthy*, Civil No. 17-00611 LEK-KJM, 2019 WL 3892408 (D. Haw. Aug. 19, 2019), which held that the plaintiff was not entitled to reimbursement for transportation costs incurred while using his personal vehicle to commute from his residence to Schofield. ECF No. 18-3 at 2. Plaintiff's request for reconsideration was denied by the CBCA on April 7, 2021. ECF No. 18-4 at 2.

---

[1] Plaintiff mischaracterizes this fact as a claim by Defendant that RCC-P employees were not expected to travel back and forth between their homes and Schofield daily and he therefore disputes it. ECF No. 25 (Plaintiff's Concise Statement of Facts in Opposition of Defendant's Motion ("CSF in Opp'n")) ¶ 1; ECF No. 25-1 (Decl. of Jonathon Wright ("Pl.'s Decl.")) ¶¶ 4–5.

## II.    Procedural History

Plaintiff commenced this action on May 12, 2021, asserting that he is entitled to travel reimbursement for the miles driven beyond his normal commute to and from Schofield because Defendant did not effect a temporary change of station ("TCS").  Compl. at 1–2.  Plaintiff further claims that, in order for a change to qualify as a TCS, the temporary duty ("TDY") travel and per diem "must be otherwise payable," but that Schofield cannot constitute a TCS because it is within the local area, and so per diem is not payable.  *Id.* at 7–9 (¶¶ 1–3).  He also alleges that an approving official "must determine a TCS is more advantageous than TDY.  *Id.* at 10 (¶ 4).

On October 25, 2021, Defendant filed the present Motion, along with her CSF.  ECF Nos. 17–18.  Plaintiff filed his Opposition and CSF in Opp'n on November 16, 2021.  ECF Nos. 24–25.  On December 3, 2021, Defendant filed a Reply.  ECF No. 26.

On December 15, 2021, Plaintiff filed a Motion for Summary Judgment. ECF No. 28.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991) (citing *id.*).

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be

5

entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ.

P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer

evidence sufficient to establish the existence of an element essential to that party's

case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960,

964 (9th Cir. 1994) (citing *id.*); *Blue Ocean*, 754 F. Supp. at 1455 (same).

In considering a motion for summary judgment, "the court's ultimate inquiry

is to determine whether the 'specific facts' set forth by the nonmoving party,

coupled with undisputed background or contextual facts, are such that a rational or

reasonable jury might return a verdict in its favor based on that evidence."  *T.W.

Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

(1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving

party.  *See id.*  However, when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are reasonable in light of the

other undisputed background or contextual facts and if they are permissible under

the governing substantive law.  *See id.* at 631–32.  If the factual context makes the

opposing party's claim implausible, that party must come forward with more

persuasive evidence than otherwise necessary to show there is a genuine issue for

trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal.

Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468

(9th Cir. 1987)).

# DISCUSSION

Defendant moves for dismissal or summary judgment on the basis that the Siegrist Memo changed the RCC-P employees' duty station from Fort Shafter to Schofield, so Plaintiff was not entitled to the costs associated with the commute to Schofield.  ECF No. 17-1 at 14–18.  Plaintiff counters that these genuine issues of material fact preclude summary judgment:  (1) whether he was lawfully relocated to Schofield pursuant to 5 U.S.C. § 5737, and (2) whether Defendant is liable for his longer commute to Schofield.[2]  ECF No. 24 at 1.  At bottom, Plaintiff insists that he is entitled to reimbursement of expenses in some form, and if not reimbursement for mileage associated with his daily commute, then reimbursement for his "relocation" expenses from Fort Shafter to Schofield.  *Id.* at 3–9.

## I.   Schofield Was Plaintiff's Permanent Duty Station

According to Defendant, the dispositive issue is whether Schofield became Plaintiff's permanent duty station ("PDS") in February 2017 and for the duration of the RCC-P office renovations at Fort Shafter.  ECF No. 17-1 at 15.  This issue was already adjudicated in *Aubart*, a case in this district involving Plaintiff's co-worker who asserted the same claim.  The *Aubart* court concluded that the "undisputed record supports the conclusion that Plaintiff's permanent duty station was changed from Fort Shafter to Schofield Barracks, for the period of February

---

[2]  These are legal, not factual, issues.

18, 2017 through November 14, 2017." *Aubart*, 2019 WL 3892408, at *5, *aff'd*, 830 F. App'x 959 (9th Cir. 2020).  Plaintiff contends that the *Aubart* court did not consider or decide whether Defendant lawfully relocated him to Schofield.  ECF No. 24 at 3.  In *Aubart*, the court obviously did not render a decision as to Plaintiff, who was not a party to the case.  However, despite Plaintiff's efforts to distinguish *Aubart* from this case, *Aubart* addressed the same dispositive issue and held that Schofield became the permanent duty station for Plaintiff's co-worker based on identical underlying material facts and a similar record.  *Aubart* is therefore highly persuasive, and the Court reaches the same conclusion here.

Relying on CBCA decisions, the *Aubart* court outlined the legal principles governing the ascertainment of an employee's official station.  "An agency has discretion to determine how to treat an assignment, i.e., a permanent change of duty station or a temporary duty assignment."  *Aubart*, 2019 WL 3892408, at *3 (internal quotation marks and citations omitted).  But "[t]he papers processed by an agency are not conclusive proof of an employee's official station of employment." *Id.* (internal quotation marks and citations omitted).  The factual question of whether an assignment to a station is permanent or temporary is "determined from the orders directing the assignment, the duration of the assignment, . . . the nature of the duties performed," and "the location where an employee expects, and is expected, to spend the greater part of his time."  *Id.* (internal quotation marks and

citations omitted).  "How the agency and the employee treated the assignment at the time it was made is especially important."  *Id.* (internal quotation marks and citations omitted).

In the present case, there are no genuine issues of material fact in dispute. Plaintiff does not dispute any of the material *facts* set forth in Defendant's CSF. *See* Local Rule 56.1(e) ("Any party who opposes the motion shall file and serve with the opposing documents a separate document containing a single concise statement that admits or disputes each fact set forth in the movant's concise statement.").  Rather, he disputes two legal issues:  lawful change of official station and entitlement to TDY travel reimbursement.  ECF No. 25.  And as noted above, Plaintiff denies a "fact" never asserted by Defendant regarding his commute.  In her CSF, Defendant states that RCC-P employees were not required to travel back and forth between Schofield *and any other work sites* to perform their work. Def.'s CSF ¶ 5 (citing Siegrist Decl. ¶ 8).  Plaintiff recasts this as "Defendant's claim that [he] was not expected to travel back and forth each day of the assignment," which he disputes because he commuted from his home to Schofield each workday.  CSF in Opp'n ¶ 1; *see* Pl.'s Decl. ¶ 4; Compl. at 2.  That Plaintiff commuted between his home and Schofield is not a disputed material fact, however.  Defendant only contests Plaintiff's legal entitlement to mileage reimbursement for this commute.  Because Plaintiff did not controvert material

facts contained in Defendant's CSF, they are deemed admitted. *See* Local Rule 56.1(g).

Plaintiff acknowledges that the Siegrist Memo notified him that his official duties would be performed at Schofield while the Fort Shafter office underwent renovations. Pl.'s Decl. ¶ 3. Moreover, it is undisputed that Plaintiff and other RCC-P employees reported to Schofield — the official duty station — to complete their assigned duties from February 18, 2017 to November 2017; that the employees were unable to work at Fort Shafter during the renovations; that the distance between Fort Shafter and Schofield is 19.1 miles; and that Plaintiff and other RCC-P employees were not required to travel between Schofield and any other work sites to perform their duties. Siegrist Decl. ¶¶ 4, 6–8; *see also* Compl. at 3 (¶ 4).

Even viewing these facts and the corresponding evidence in the light most favorable to Plaintiff, they support the conclusion that Schofield was Plaintiff's PDS during the relevant period. The Siegrist Memo does not contain the phrase "permanent duty station"[3] but, when taken together with the other undisputed facts,

---

[3] Attached to the Opposition is an excerpt from what appears to be a brief submitted by Defendant in an unrelated proceeding that concerns a different legal issue (whistleblower retaliation). ECF No. 24-3. Plaintiff relies on it for a statement that the Siegrist Memo does not mention a permanent change of station. ECF No. 24 at 7 (citing ECF No. 24-3). This does not change the Court's calculus, as the outcome here factors the absence of any express reference to a PDS.

demonstrates that Schofield was Plaintiff's PDS.  Plaintiff was expected to complete his assigned duties at Schofield, and did, for the approximately nine months that the Fort Shafter office was unavailable due to renovations.  *See In re Roberts*, 11-2 B.C.A. (CCH) ¶ 34794, CBCA 2230-TRAV, 2011 WL 2602348 (C.B.C.A. June 21, 2011) ("An employee's PDS is where an employee spends, and is expected to spend, the most time." (internal quotation marks and citation omitted)).  He also traveled exclusively to Schofield, and was not required to travel between Schofield and another work site to perform his job.  Accordingly, Defendant properly treated Plaintiff's relocation from Fort Shafter to Schofield as a change in PDS for the relevant period.

## II.     Plaintiff Is Not Entitled To Reimbursement

### A.     TDY Travel Expenses

In light of the Court's determination that Schofield was Plaintiff's PDS for the relevant time period, he is not entitled to TDY travel reimbursement.  "It is well settled that an employee who is engaged in commuting between his or her residence and official duty station is performing personal business, not official business, for the Government, and the employing agency will not pay the transportation costs that the employee incurs while commuting."  *Aubart*, 2019 WL 3892408, at *6 (internal quotation marks omitted) (citing *In re Conforti*, 07-2

B.C.A. (CCH) ¶ 33693, CBCA 828-TRAV, 2007 WL 3055016 (C.B.C.A. Oct. 3, 2007)).

Defendant argues that although this is an action for TDY travel mileage reimbursement, Plaintiff was not on travel orders and cannot show that his daily commute was official and therefore reimbursable.[4]   ECF No. 17-1 at 14.  Indeed, Plaintiff used his privately owned vehicle to commute to and from Schofield, *see* Pl.'s Decl. ¶ 4; Compl. at 3 (¶ 4), and this commute constituted personal, not official, business.  *See Aubart*, 2019 WL 3892408, at *6 (citation omitted). Therefore, Defendant was not required to reimburse him for TDY travel/mileage expenses.  *See In re Conforti*, 2007 WL 3055016 ("Because the expenses claimed by Mr. Conforti constitute commuting costs between his home and his official station, the agency properly denied the claim."); *In re Parshall*, 2020 WL 5744015

---

[4]  Plaintiff relies on *In re Hare*, 16-1 B.C.A. (CCH) ¶ 36462, CBCA 5261-TRAV, CBCA 5300-TRAV, CBCA 5301-TRAV, CBCA 5302-TRAV, 2016 WL 4260800 (C.B.C.A. Aug. 10, 2016), to support his TDY travel mileage reimbursement claim.  ECF No. 24 at 8.  However, *Hare* is factually distinguishable.  There, local TDY travel expenses were authorized for the employees' commutes to an alternative work location because the agency treated the site as a TDY location and it accepted claims for excess mileage reimbursement.  *See In re Hare*, 2016 WL 4260800; *In re Parshall*, 20-1 B.C.A. (CCH) ¶ 37693, CBCA 6890-TRAV, 2020 WL 5744015 n.2 (C.B.C.A. Sept. 22, 2020).  The matter was before the CBCA solely because of a timeliness issue regarding certain reimbursement claims filed outside the relevant fiscal years.  *See Hare*, 2016 WL 4260800.  Here, the agency treated Schofield as a PDS and it did not authorize reimbursement for TDY travel expenses.  *See In re Parshall*, 2020 WL 5744015 n.2.

("'Commuting to and from work is not a covered activity' and is not considered as being performed during official duty time." (brackets and citations omitted)).

**B.     Relocation Expenses**

Plaintiff also asserts that he is entitled to relocation allowances.  ECF No. 24 at 3–5.  Under 5 U.S.C. § 5737, "an agency may pay to or on behalf of an employee assigned from the employee's official station to a duty station for a period of not less than six months and not greater than 30 months" prescribed expenses in lieu of travel and subsistence expenses.  5 U.S.C. § 5737(a).  This provision "is intended to reduce Government expenditures for the long-term assignment of an employee to a temporary official station and to increase the employee's satisfaction by providing an alternative to a long-term temporary duty travel assignment that would involve a prolonged separation from his/her immediate family."  Federal Travel Regulation; Temporary Change of Station, 62 Fed. Reg. 13,770, 13,771, 1997 WL 125283 (Mar. 21, 1997).  The relocation benefits envisioned by § 5737 "for temporarily transferred employees are irrelevant [when] a local PDS change does not require either the employee's or family's relocation."  *In re Parshall*, 2020 WL 5744015.

Here, Plaintiff did not relocate in the manner contemplated by § 5737. Indeed, the change in PDS merely required a longer commute within the same city. *See id.* (determining, in a claim involving another RCC-P employee, that relocation

13

was not required and there was merely "a local change of office made necessary because of the unavailability of the employee's original PDS, with no change in duties or responsibilities of the employee").  As such, Plaintiff is not entitled to relocation expenses.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.  ECF No. 17.  Because Defendant's Motion is granted, Plaintiff's Motion for Summary Judgment is DENIED as moot.  ECF No. 28.

IT IS SO ORDERED.

DATED:    Honolulu, Hawai'i, January 12, 2022.



Jill A. Otake
United States District Judge

Civil No. 21-00228 JAO-KJM, *Wright v. Wormuth*; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERATIVE, FOR SUMMARY JUDGMENT

14